UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

Eastern District of Kentucky
F I L E D

NOV 2 3 2005

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-26-GWU

CAMELLIA S. MAY,                                    PLAINTIFF,

VS.                    **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                   DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). The appeal is currently before the Court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity?
    If yes, the claimant is not disabled. If no, proceed to Step 2.
    See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical
    or mental impairment(s)? If yes, proceed to Step 3. If no, the
    claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any
    impairment(s) significantly limiting the claimant's physical or

1

May

mental ability to do basic work activities?  If yes, proceed to
Step 4.  If no, the claimant is not disabled.  See 20 C.F.R.
404.1520(c), 404.1521, 416.920(c), 461.921.

4.    Can the claimant's severe impairment(s) be expected to result
in death or last for a continuous period of at least 12 months?
If yes, proceed to Step 5.  If no, the claimant is not disabled.
See 20 C.F.R. 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of
impairments meeting or equaling in severity an impairment
listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of
Impairments)? If yes, the claimant is disabled. If no, proceed
to Step 6.    See 20 C.F.R. 404.1520(d), 404.1526(a),
416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his
residual functional capacity and the physical and mental
demands of the work he has done in the past, still perform this
kind of past relevant work?  If yes, the claimant was not
disabled.    If no, proceed to Step 7.    See 20 C.F.R.
404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his
residual functional capacity, age, education, and past work
experience, do other work--i.e., any other substantial gainful
activity which exists in the national economy?  If yes, the
claimant is not disabled.    See 20 C.F.R. 404.1505(a),
404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent

to the judicial review of administrative agency action apply.  Review of the

Commissioner's decision is limited in scope to determining whether the findings of

fact made are supported by substantial evidence. Jones v. Secretary of Health and

Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

2

May

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

May

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

May

to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. <u>Id</u>. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. <u>E.g., Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called

5

May

"light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence

6

to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The administrative law judge (ALJ) found that May suffered from coronary artery disease, hypertension, and obesity, all of which were "severe" impairments. (Tr. 20). While the associated functional restrictions limited the plaintiff to less than a full range of light level work, and precluded the performance of past relevant work, the ALJ believed May could return to the specific jobs which had been identified by a vocational expert (VE) at the administrative hearing. (Tr. 21).

The plaintiff had originally alleged disability since late 2000 due to problems with her back, joints, poor vision, high blood pressure and other cardiovascular problems, diabetes, depression, anxiety and learning disabilities. (Tr. 54, 71, 83,

In mid-1999, more than a year prior to the alleged onset date, the plaintiff underwent several diagnostic studies after a motor vehicle accident. Blunt trauma to the chest, a sternal fracture, and a mild contusion to the abdominal wall were diagnosed, and newly-discovered diabetes and high blood pressure were treated. (Tr. 172, 183-184). A lumbar spine x-ray and one of the left knees showed evidence of degenerative changes. (Tr. 159). A bone scan done approximately that same time revealed some evidence of probable arthritic changes in both knees, the

7

left ankle and the S1 joint. (Tr. 156). Subsequently, May underwent MRIs of the cervical spine and brain; both were normal in result. (Tr. 154, 540).

The plaintiff's neck and back symptoms at least temporarily improved (Tr. 541-542). Then the patient noticed shortness of breath and chest pressure which resulted in a referral to a cardiologist (Tr. 545-546).

In February, 2000 (also before the alleged onset date), a letter was written by Cardiologist Ahmed Malik, who noted blood pressure of 138/90, a soft systolic murmur, and an EKG showing sinus tachycardia and nonspecific ST-T changes. (Tr. 209-210). The plaintiff underwent angiography that same month, which revealed subtotal occlusion of the left anterior descending coronary artery in its mid portion and luminal irregularity involving the circumflex vessel and the right coronary system. (Tr. 216). Revascularization was performed with the use of a stent. (Tr. 264, 281, 317). In May, still five months before the alleged onset date, an abnormal myocardial perfusion study was noted by Dr. Malik after the patient complained of recurrent chest pain. (Tr. 265, 317). The patient underwent left heart catheterization, selective coronary angiography and left ventriculography, which revealed total occlusion of the LAD. (Tr. 283).

Coronary artery bypass grafting was performed in October, 2000 (Tr. 417), the alleged onset month. During physical therapy, her rehabilitation potential was assessed as good. (Tr. 521). As of January, 2001, the operative results were said by Malik to be "successful" and her clinical condition satisfactory with no evidence

8

of reversible perfusion defects upon recent testing. (Tr. 342). In June, 2001, the doctor indicated that she had not returned to see him. (Tr. 349). Thus, it would appear that May's cardiac condition substantially improved within twelve months of the alleged onset date

Two medical reviewers opined that the plaintiff was capable of light level work with restrictions on climbing, temperature extremes, and hazards. (Tr. 350-357, 359-368).

The plaintiff underwent cataract surgery in March, 2001 (Tr. 409-410) and by the following month her eyesight stood near normal, at 20/30 and 20/20 (Tr. 535). Complaints of back, neck and knee pain were made to her family physician in 1999 and 2000 (e.g., Tr. 554), but other complaints seemed to dominate from November, 2000 onward (Tr. 556-573). No new source cited any limitations incompatible with the hypothetical physical limitations. The Court, thus, agrees with the defendant that the plaintiff's documented physical limitations were properly considered.

As for the plaintiff's mental restrictions, one medical reviewer opined that there were no severe mental restrictions (Tr. 370). A physical therapist in October, 2000 described May as alert, able to follow commands consistently and conversing logically. (Tr. 520). Complaints of depression to her family physician did not result in any functional restrictions being cited. (E.g., Tr. 561). A mental health evaluation listed all abilities as good but one, and it was indicated that there was no significant cognitive deficit. (Tr. 346-347). Thus, the ALJ's analysis of mental limitations was

9

May

adequate as well.

In actuality, the plaintiff's only specific argument is that the ALJ did not properly characterize her educational level. The ALJ, in the framing of his hypothetical question, was vague as to this factor. As the defendant notes, the VE indicated she had reviewed the exhibits and been present at the hearing (Tr. 599) where the plaintiff testified she had an eighth grade education and could read and write (Tr. 582), so this assumes the VE took into account what evidence as to literacy/education the plaintiff wished to produce. Moreover, the WRAT examiner reported that the plaintiff experienced significant vision problems–this was immediately prior to her cataract surgery–while taking the reading test (Tr. 347) which casts some doubt on its precise reliability of the grade cited on testing.

The decision will be affirmed.

This the ___23___ day of November, 2005.

G. WIX UNTHANK
SENIOR JUDGE

10